UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JEFFREY MACK, 99-A-4574,

              Plaintiff,

v.

DR. BANGSIL,

              Defendant.

**DECISION AND ORDER**

07-CV-0829(M)

---

              In accordance with 28 U.S.C. §636(c), the parties have consented to proceed before a Magistrate Judge [14].[1] Before me are plaintiff's motion for appointment of counsel [44] and defendant's motion for summary judgment [52]. Oral argument was held on January 28, 2011. For the following reasons, I order that defendant's motion for summary judgment be granted, and that plaintiff's motion for appointment of counsel be denied as moot.

**BACKGROUND**

              Plaintiff, proceeding *pro se,* seeks to recover damages pursuant to 42 U.S.C. §1983 for defendant's alleged deliberate indifference to a testicle infection he developed while incarcerated at the Gowanda Correctional Facility ("Gowanda"). Complaint [1], pp. 5-6. Defendant, an employee of the Department of Correctional Services ("DOCS"), is the Health Services Director at Gowanda. Bangsil Declaration [58], ¶1.

              Plaintiff was transferred to Gowanda on June 18, 2007. Bangsil Declaration [58], Ex. A, #319. At that time, his reported medical conditions were a recent carpal tunnel surgery, high blood pressure, and hearing loss. Id. Defendant first examined plaintiff on June 26, 2007.

---

[1]       Bracketed references are to the CM/ECF docket entries.

Id., #318. Although plaintiff alleges (in unsworn fashion) that he advised defendant of his condition at that time (plaintiff's statement of facts [60], ¶3), defendant's treatment notes do not reflect this. Bangsil Declaration [58], Ex. A, #318.[2] Defendant's treatment notes reflect that he was "unable to complete visit due to inmates behavior". Id. Plaintiff was next examined by defendant on July 3, 2007, but there is no notation in defendant's treatment notes of any complaints by plaintiff about his testicles. Id., #317.

Plaintiff first complained of a burning irritation on his testicles on July 9, 2007. Id., #316. A nurse prescribed Clotrimazole, an antifungal cream, and Ibuprofen for pain. Id. On July 11, 2007, plaintiff was seen by defendant for complaints "scaling/itching" in his right groin and was diagnosed with Tinea Cruris, an inflammation of the scrotal/groin area. Id., ¶9, Ex.A, #315.[3] Defendant also "instructed [plaintiff] on health teaching and applying the lotion to his right groin." Id., 9.

Plaintiff returned to sick call July 16, 2007 complaining of "drainage from scrotal rash". Id., Ex. A, #314. Later that day he was seen by defendant, who noted reddening of the scrotal area and ordered Domeboro soaks and Clotrimazole. Id.

On July 23, 2007, plaintiff complained that the Domeboro soaks were ineffective, and an August 2, 2007 appointment with defendant was scheduled. Id., #313. In the interim, he was seen by the medical staff twice for unrelated medical issues and did not complain about his testicles. Id. At the August 2, 2007 appointment, plaintiff complained of persistent

---

[2] Plaintiff alleges that defendant first examined him on June 28, 2007, but this is not supported by the medical records. Plaintiff's Statement of Facts [60], ¶3.

[3] The parties dispute whether defendant examined him on this and other occasions. *Compare* Bangsil Reply Declaration [61], ¶¶7, 8 *with* Plaintiff's Statement of Facts [60], ¶¶4, 8.

irritation/cracks on his penile shaft and left groin and scaling and darkening of his left groin and penile shaft. Id., #312. Defendant diagnosed plaintiff with "Tinea Cruris, persistent", and prescribed Diflucam and Clotrimazole and gave him instructions on hygiene of the groin area. Id. The following day plaintiff was seen by a nurse for complaints of bleeding around the penis, but an examination revealed no bleeding. Id. On August 6, 2007, he was seen by a nurse for penile irritation and brownish drainage. Id. At that time, he returned an empty tube of Clotrimazole, but refused another. Id. The nurse discussed plaintiff's complaints with defendant, but no new treatment was prescribed. Id. Thereafter, plaintiff was seen by medical staff for unrelated conditions on 9 occasions through August 29, 2007, but there is no notation in the treatment notes of any complaints by plaintiff about his testicles. Id., ##309-311.

Plaintiff's complaints resumed August 31, 2007, when he complained of a penile lesion, but defendant's examination revealed that it had healed. Id., #308. Plaintiff next complained of penile lesions on September 11, 2007. Id., #306. A nurse noted "minute redness near head of penis", and prescribed triple antibiotic ointment. Id. On September 18, 2007, plaintiff advised a nurse that he "has cuts on his penis he thinks because the soap burns when he showers". Id., #305.

Plaintiff was examined by a nurse on September 26, 2007 for a fever and complaints of boils on his scrotum, which were confirmed upon examination. Id. Although he was scheduled to see defendant that morning, plaintiff was not examined by defendant until 1:30 p.m. Id., ##304-305. Defendant's examination revealed a left scrotal abscess, which prompted him to have plaintiff remotely examined by an emergency room physician and the Erie County Medical Center ("ECMC"). Id., #304. Within hours, plaintiff was transferred to ECMC, where

he was admitted and treated by a urologist, who diagnosed him with left epididymal orchitis, an infection of a testes. Id., ¶20, Ex. A, #348. According to the ECMC admission report, plaintiff stated "that this has been going on for several weeks and has been increasing with regards to intensity of pain, swelling." Id., #348. Plaintiff was discharged from ECMC on October 2, 2007, and then discharged to general population following an examination by defendant. Id., ##355, 358. Defendant scheduled a follow-up examination at ECMC for October 17, 2007. Id., #355.

In moving for summary judgment, Dr. Bangsil argues that no reasonable jury could conclude that his treatment of plaintiff was deliberately indifferent to plaintiff's medical needs.

## ANALYSIS

In order to establish a violation of the Eighth Amendment arising out of inadequate medical treatment, plaintiff must prove that defendants acted with "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). Defendant's motion is supported by proof in evidentiary form, including his declaration [58] and reply declaration [61] detailing his treatment of plaintiff and supporting his position that he was not deliberately indifferent to plaintiff's serious medical needs.

The motion was accompanied by a "Notice to *Pro Se* Litigants Opposing Summary Judgment", which specifically warned plaintiff that "THE CLAIMS YOU ASSERT IN YOUR COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS MOTION by filing your own sworn affidavits or other papers as required by Rule 56(e). An affidavit is a sworn statement of facts based on personal knowledge that would

be admissible in evidence in a trial", and that "[a]ny witness statements, which may include your own statements, *must be in the form of affidavits*". ([52], p.2) (emphasis added).

Plaintiff has failed to submit any affidavits in response to the motion. While his Statement of Undisputed Facts [60] contains various unsworn assertions, such as that he complained of swelling and pain in his testicle from June 26 - September 26, 2007 (id. ¶5), all such unsworn assertions must be disregarded for purposes of this motion. *See* Guerrero v. White-Evans, 2009 WL 6315307, *1 (S.D.N.Y. 2009), adopted, 2010 WL 1257537 (S.D.N.Y. 2010) ("plaintiff's *pro se* status does not relieve him of the usual requirements of summary judgment . . . . [A] pro se party's bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment").

In any event, I conclude that no trier of fact, considering the record as a whole, could reasonably conclude that defendant had been deliberately indifferent to plaintiff's medical needs. The "deliberate indifference" standard consists of both objective and subjective components. Hathaway v. Coughlin, 37 F. 3d 63, 66 (2d Cir. 1994), cert. denied, 513 U.S. 1154 (1995). Under the *objective* component, the alleged medical need must be "sufficiently serious." Id. A "sufficiently serious" medical need is "a condition of urgency, one that may produce death, degeneration, or extreme pain." Id. "Factors that have been considered include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Chance v. Armstrong, 143 F. 3d 698, 702 (2d Cir. 1998).

To satisfy the *subjective* component, plaintiff must show that the defendant officials acted with a "sufficiently culpable state of mind" in depriving him of adequate medical treatment. Hathaway v. Coughlin, 99 F. 3d 550, 553 (2d Cir. 1996). "The subjective element of deliberate indifference 'entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" Id. *See also* Hernandez v. Keane, 341 F. 3d 137, 144 (2d Cir. 2003), cert. denied, 543 U.S. 1093 (2005) (likening the necessary state of mind to "the equivalent of criminal recklessness"). In order to be found "sufficiently culpable," the official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Even assuming that plaintiff could establish that epididymal orchitis was sufficiently serious condition satisfying the objective prong, I find that he has failed to establish the subjective prong of the deliberate indifference standard. "Deliberate indifference [will not] be found when an inmate simply prefers an alternative treatment or feels that he did not get the level of medical attention that he desired." Shire v. Greiner, 2007 WL 840472, *12 (S.D.N.Y. 2007). Instead, plaintiff must establish that defendant "acted with a sufficiently culpable state of mind, *i.e.*, deliberate indifference. [He] must therefore show that prison officials intentionally denied, delayed access to, or intentionally interfered with prescribed treatment." Tafari v. Stein, 2009 WL 331378, *6 (W.D.N.Y. 2009) (Scott, M.J.), reconsideration denied, 2009 WL 1322317, 2009 WL 1579530.

Far from suggesting indifference, the record demonstrates that plaintiff's complaints were repeatedly addressed. Plaintiff received anti-fungal medications for his complaints, which resulted in periods of improvement until his condition worsened on September 26, 2007. Although plaintiff seeks to recast the level of treatment he received, his allegations are undermined by his medical records. For example, plaintiff's unsworn allegation that defendant "refused" to see him from July 16, 2007 until September 18, 2007 (Plaintiff's statement of facts [60], ¶13) is contradicted by his medical records, which demonstrate that he was seen by defendant on August 2 and 31, 2007, and was also seen by the medical staff for unrelated conditions on 9 occasions through August 29, 2007, without any complaints by plaintiff about his testicles. Bangsil Declaration [58], Ex. A, #308-312. This also comports with the ECMC admission report which indicates that plaintiff reported "that this has been going on for several weeks and has been increasing with regards to intensity of pain, swelling." Id., #348.

Plaintiff's unsworn allegation that defendant terminated his July 26, 2007 examination (Plaintiff's statement of facts [60], ¶13) is likewise contradicted by the medical records, which indicate that the appointment was terminated because of plaintiff's behavior. Bangsil Declaration [58], Ex. A, #318.

Although plaintiff disagrees with the level of the treatment he received, the record belies any assertion that defendant ignored his condition. Plaintiff was seen by defendant and other medical staff on 13 occasions from July 9, 2007 to his hospitalization on September 26, 2007. Irrespective of whether epididymal orchitis was a "new" condition that was first brought to defendant's attention on September 26, 2007 (Bangsil declaration [58], ¶22), or was present

throughout defendant's treatment of plaintiff, when plaintiff's condition worsened, defendant promptly referred him to ECMC.

Plaintiff also disputes the appropriateness of the treatment he received. He alleges that he was informed at ECMC that antibiotics should have been administered by defendant. Plaintiff's Memorandum of Law [59], p. 5. Even assuming that another physician may have treated plaintiff's condition differently, this alone does not make defendant's conduct deliberately indifferent. *See* Williams v. Smith, 2009 WL 2431948, *9 (S.D.N.Y. 2009) ("a prison doctor who relies on his medical judgment to modify or disagree with an outside specialist's recommendation of how to treat an inmate is not said to act with deliberate indifference"). "[D]isagreements over treatment do not rise to the level of a Constitutional violation", Graham v. Gibson, 2007 WL 3541613, *5 (W.D.N.Y. 2007) (Siragusa, J.), as "the Constitution does not require that an inmate receive a particular course of treatment". Tafari, 2009 WL 331378, at *7.

Plaintiff further argues that defendant should have utilized a test to diagnose his condition. Plaintiff's Statement of Facts [60], ¶20. "The *totality* of an inmate's medical care must be considered in order to determine whether a prison official has acted with deliberate indifference to serious medical needs". Wandell v. Koenigsmann, 2000 WL 1036030, *3 (S.D.N.Y.2000) (emphasis added). Thus, even accepting plaintiff's allegations as true, this isolated error, when viewed in the context of the entire course of plaintiff's treatment, would at most constitute negligence or malpractice, but does not rise to the level of culpable recklessness. *See* Calloway v. Denane, 2009 WL 3064781, *4 (N.D.N.Y. 2009) ("Allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness").

Recognizing that "determinations made by medical providers within their discretion are given a 'presumption of correctness' when it concerns the care and safety of patients", Mendoza v. McGinnis, 2008 WL 4239760, *11 (N.D.N.Y. 2008), I do not find that defendant's conduct rises to the level of deliberate indifference.[4]

B.  **Plaintiff's Motion for Appointment of Counsel**

Plaintiff's motion "for the appointment of counsel is rendered moot by the granting of summary judgment to the Defendants and dismissal of his complaint." Warren v. Westchester County Tail, 106 F.Supp.2d 559, 572 (S.D.N.Y. 2000).[5]

**CONCLUSION**

For these reasons, I order that the defendant's motion for summary judgment [52] be granted and that plaintiff's motion for appointment of counsel [44] be denied as moot. The Clerk of Court is directed to close this case.

**SO ORDERED**.

DATED: February 1, 2011

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge

---

[4]  Given this conclusion, I need not reach defendant's qualified immunity arguments.

[5]  I denied plaintiff's prior motion for appointment of counsel. August 31, 2009 Decision and Order [15].